UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER ELAM HUDLER, | : | No.: 1:21-cv-00005 |
| | : | |
| Petitioner, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| UNION COUNTY, *et al.*, | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM OPINION**

## I.   Introduction.

Christopher Elam Hudler ("Hudler"), commenced this action by filing a petition (*doc. 1*) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("petition") against the respondents, Ernie Ritter, the Sherriff of Union County, Pennsylvania, and the Pennsylvania Attorney General's Office. *Doc. 1* at 1. Hudler's petition, which has been fully briefed, is ripe for our disposition. For the reasons that follow, we will dismiss Hudler's petition as it is moot.

## II.   Background and Procedural History.

By way of background, on January 4, 2021, Hudler filed a petition for writ of habeas corpus. *Doc 1*. In his petition, Hudler explains that on April 10, 2018, he was convicted, in absentia, of indirect criminal contempt (23 Pa. Con. Stat. § 6114)

for violating a protection of abuse order. *Doc. 1* at 17. As a result, Hudler was sentenced to pay a $1,000 fine and to a prison term of three to six months. *Id.* In his petition, Hudler alleges that his counsel failed to file a notice of appeal because he had been arrested. *Id.* at 17-18. He asserts that the Pennsylvania Court of Common Pleas denied his application to file a late notice of appeal, which the Superior Court of Pennsylvania affirmed, and that the Superior Court of Pennsylvania also denied his writ of habeas corpus. *Id.* at 18. Hudler claims that "[t]he Supreme Court of Pennsylvania denied review." *Id.* Finally, Hudler notes that the stay issued by both Pennsylvania and Oregon courts has expired, and "the Oregon courts have ordered the extradition warrant to be executed on January 7, 2021." *Id.* Ultimately, Hudler requested "a stay or bail pending the deposition of his petition." *Id.* at 17.

In light of Hudler's confusing petition, on January 6, 2021, we ordered Hudler to provide this court with copies of all underlying Pennsylvania and Oregon state court proceedings and copies of all Pennsylvania and Oregon court orders. *Doc. 5* at 3. Additionally, we ordered Hudler to provide this court with a cogent procedural history explaining the factual underpinnings of this case incorporating said documents, including missing exhibits listed in his filings on the docket. *Id.* We also ordered Hudler to show cause as to why his petition should not be

dismissed because he was not currently in Pennsylvania custody, as well as why his claims are not procedurally defaulted. *Id*.

On January 25, 2021, Hudler's counsel filed a letter with this court, explaining that Hudler was extradited from his home in Oregon to Pennsylvania, thereby satisfying the court's jurisdictional question. *Doc. 18*. That same day, we issued an Order denying Hudler's emergency application seeking an order staying his extradition and seeking bail (*doc. 4*) as moot. *Doc. 19*. Additionally, in light of the extradition, we ordered Hudler to file a brief in support of his petition for writ of habeas corpus and for the respondents to file an answer. *Doc. 20*. In their response, the respondents argued that Hudler is subject to procedural default, *doc. 22* at 20, and that "Hudler's habeas corpus petition is well beyond the time limitation of the AEDPA" because Hudler's petition "was not filed until January 4, 2021, which is approximately 605 days late." *Id*. at 21-22. Accordingly, we ordered Hudler to respond the respondents' argument that Hudler's claims are procedurally defaulted, and his petition was filed too late, and why his emergency application should not be denied on this basis. *Doc. 23*.

After the parties filed their briefs, on March 15, 2021, we denied Hudler's emergency application for bail. *Doc. 27* at 7. On May 20, 2021, we issued an Order directing the parties to file a joint status report regarding whether Hudler was still incarcerated. *Doc. 29*. On May 25, 2021, the parties informed this court

that Hudler was released from custody and is currently residing at his home in Oregon. *Doc. 30*. Accordingly, on May 27, 2021, we ordered Hudler to show cause as to why his petition for a writ of habeas corpus should not be dismissed as moot. *Doc. 31*. On May 28, 2021, Hudler's counsel filed a letter in which he argues that even though Hudler is no longer serving a sentence, the court should not consider his petition moot because he can demonstrate he will suffer some collateral consequences if his conviction is allowed to stand. *Doc. 32* at 1-2. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the matter is ripe for decision.

### III. Mootness Doctrine.

Article III of the Constitution limits the judicial power of the United States to "cases" and "controversies." U.S. Constitution, art. III, § 2. "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "And courts enforce it 'through the several justiciability doctrines that cluster about Article III,' including 'standing, ripeness, mootness, the political-question doctrine, and the

prohibition on advisory opinions.'" *Id.* (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)).

This case involves mootness, which is "a doctrine that 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,' and which is 'concerned with the court's ability to grant effective relief.'" *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016), and *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001)). "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis*, 494 U.S. at 477).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the

parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). In other words, "a case is moot if 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief.'" *Hamilton*, 862 F.3d at 335 (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)).

### IV. Discussion.

Here, it is undisputed that Hudler is no longer incarcerated. *See doc. 30*. Accordingly, we must decide if Hudler has demonstrated that he will suffer some collateral consequences if his conviction is allowed to stand. *See Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009) ("Once a sentence has expired … some continuing injury, also referred to as a collateral consequence, must exist for the action to continue.").

Hudler argues that his indirect criminal contempt charge will result in collateral consequences if it is allowed to stand. *Doc. 32* at 1. Hudler further argues that "collateral consequences are presumed 'when a litigant challenges a criminal conviction.'" *Id.* (quoting *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007)). We note, however, "[o]nce the convict's sentence has expired … some

concrete and continuing injury other than the now-ended incarceration or parole -- some collateral consequence of the conviction -- must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

To support his argument, Hudler relies on *T.J.K. v. M.D.C.*, where the Pennsylvania Superior Court noted that "we find that Mother's challenges to her conviction for criminal contempt fall within a recognized exception to the mootness doctrine, because there is a reasonable possibility Mother's conviction will result in criminal or civil collateral consequences." *T.J.K. v. M.D.C.*, No. 3321 EDA 2017, 2019 WL 2240709, at *2 n.4 (Pa. Super. Ct. May 23, 2019) (citing *Commonwealth v. Rhode*, 402 A.2d 1025, 1026 (Pa. 1979)). Curiously, in *T.J.K.*, the Pennsylvania Superior Court failed to clarify what potential criminal or civil collateral consequences existed if the conviction were to stand. Indeed, no discussion is devoted toward what specific collateral consequences the convicted individual faced.

In contrast to *T.J.K.*, our own District Court has held that, in the context of a habeas petition review, there is no presumption of collateral consequences when the petitioner is challenging an indirect criminal contempt conviction. *See Reznickcheck v. PA Bd. of Prob. & Parole*, No. 3:18-cv-93, 2019 U.S. Dist. LEXIS 185036, at *3 (M.D. Pa. 2019 Oct. 24, 2019) ("Petitioner has not alleged nor can the Court perceive of any collateral consequences to maintain his habeas petition.

As there is no longer a live case or controversy … the petition for writ of habeas corpus will be dismissed as moot.").

Although Hudler has generally alleged that he will experience collateral consequences due to his indirect criminal contempt charge, he fails to provide any explanation as to what those collateral consequences will be in his case, as is his burden. *See Burkey*, 556 F.3d 142 (relying on *Spencer*, where "the Court rejected numerous collateral consequences proffered by the petitioner because they were no more than 'a possibility rather than a certainty or even a probability,' or pure speculation.") (quoting *Spencer*, 523 U.S. at 14-16).  Similar, to *Reznickcheck*, this Court cannot perceive any collateral consequences to maintain this habeas petition as Hudler has not alleged why his conviction will result in collateral consequences. Accordingly, we find that Hudler fails to allege sufficient collateral consequences to maintain his habeas petition.  Thus, there is no longer a live case or controversy; therefore, we will dismiss Hudler's petition as moot.

### V. Conclusion.

Based on the foregoing, Hudler's 28 U.S.C. § 2254 habeas corpus petition is **DISMISSED,** and the case is closed. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge
